DE SANCHEZ v DEPARTMENT OF MENTAL HEALTH

Docket No. 101591. Argued March 5, 1997 (Calendar No. 7). Decided July 8, 1997.

Francine C. de Sanchez and Steven Jason, as personal representatives of the estate of Thomas A. Baltus, deceased, brought a wrongful death action in the Court of Claims against the Department of Mental Health, alleging that a dangerous or defective condition existed in the Ypsilanti Regional Psychiatric Hospital, where the decedent hanged himself from an overhead dividing bar inside a toilet stall while he was on general suicidal precautions. The court, Robert Holmes Bell, J., granted the defendant's motion for summary judgment. The Court of Appeals, D. E. HOLBROOK, JR., J., and (J. D. PAYANT, J., concurring) and (T. M. BURNS, P.J., concurring), reversed and remanded (Docket No. 80539). The Supreme Court remanded the case to the Court of Appeals, 430 Mich 894 (1988). On remand, the Court of Appeals, D. E. HOLBROOK, JR., P.J., and WAHLS and HOOD, JJ., modified its earlier opinion, specifically upholding the grant of summary judgment on the portion of the claim that related to the defendant's failure to design the restroom in a manner that would allow proper observation and supervision of patients. However, it found that the allegation that the restroom design was dangerous or defective in light of the suicidal tendencies of its users was sufficient to withstand summary judgment (Docket No. 110071). On remand, the trial court, Melinda Morris, J., initially denied the defendant's motion for summary disposition, and, on reconsideration, granted summary disposition for the defendant. After remand, the Court of Appeals, REILLY, P.J., and R. B. BURNS and C. L. HORN, JJ., affirmed in an unpublished opinion per curiam, concluding that because the undisputed evidence indicated that proper supervision would have offset any shortcomings in the configuration of the room, summary disposition was properly granted on the building design defect claim (Docket No. 158052). The plaintiffs appeal.

In an opinion by Justice BOYLE, joined by Chief Justice MALLETT, and Justices BRICKLEY, CAVANAGH, and KELLY, the Supreme Court *held*:

The defense that proper supervision would have prevented the decedent's death does not negate the allegation of a true building

defect so as to permit the conclusion that there is no question of
material fact regarding the existence of a defect.

1. Case law has held that as long as a physical defect in a public
building coincided in causing an injury, the government entity hav-
ing control of the building may be liable even if negligent supervi-
sion was involved. Where the essence of a tort claim is negligent
supervision by a governmental entity, a plaintiff cannot transform
the claim into a building-defect claim merely because a superior
building design would have improved the ability to supervise. Simi-
larly, where the essence of a tort claim is a defective building
under the public building exception, summary disposition may not
be granted simply by claiming that proper supervision would have
averted the injury.

2. In this case, the plaintiffs were not required to present evi-
dence that more extensive supervision could not have prevented
the suicide or that such supervision could not have been reasona-
bly implemented in order to defeat the defendant's motion for sum-
mary disposition.

Reversed and remanded.

Justice RILEY, joined by Justice WEAVER, dissenting, stated that
the plaintiffs' claim really is only a claim of negligence, and the
defendant is not subject to liability as a matter of law. There is no
valid claim for a building defect as a matter of law under the public
building exception to governmental immunity for an allegation of a
design defect where the building was not used for its intended pur-
poses and there was no actual physical defect in the building itself.

*Lopatin, Miller, Freedman, Bluestone, Herskovic, Heilmann & Domol* (by *Richard E. Shaw*) for the plaintiffs-appellants.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Alan F. Hoffman,* Assistant Attorney General, for the defendant-appellee.

BOYLE, J. We granted leave in this case to determine whether a defense of proper supervision may bar a true building defect claim under the public building exception to governmental immunity. Finding it does not, we reverse the decision of the Court of Appeals

and remand this case to the trial court for further proceedings consistent with this opinion.[1]

I

On March 11, 1983, plaintiffs' decedent was involuntarily admitted to Ypsilanti Regional Psychiatric Hospital. There, decedent was diagnosed with reactive depression, thought disorders, and suicidal preoccupation. The decedent was immediately placed on one-to-one suicidal precautions. Six days later, he was taken off one-to-one watch and was placed on general suicidal precautions.[2] The following day, while still on general precautions, the decedent hanged himself by attaching a cloth belt to an overhead dividing bar inside a toilet stall in the facility's restroom.

For the past decade, this case has weaved its way through the judicial system. Separate lawsuits were originally filed in the Court of Claims against the Department of Mental Health and in the Washtenaw Circuit Court against Dr. Genoves-Andrews.[3] On September 6, 1984, the Department of Mental Health was

---

[1] Plaintiff submits that the issue whether a defect existed in the building itself is not now before this Court. Whether a given room is dangerous or defective must be determined in light of the uses or activities for which it is specifically assigned. *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 422; 487 NW2d 106 (1992), citing *Bush v Oscoda Area Schools*, 405 Mich 716, 731; 275 NW2d 268 (1979). The issue whether a defect existed was not fully briefed or argued. From submissions before us, we do not know whether the state provided other restroom facilities for patients actively suicidal or, if not, what patients with what difficulties were assigned to this restroom, so we are unable to determine, as a matter of law, whether a true building defect existed.

[2] One-to-one suicidal precautions required that a staff member remain with the patient at all times, including when the patient used the restroom. General suicidal precautions required that the patient be monitored every fifteen minutes.

[3] Dr. Genoves-Andrews was an employee of Ypsilanti Regional Psychiatric Hospital at the time of decedent's death.

granted summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8).[4] Dr. Genoves-Andrews was granted summary judgment pursuant to GCR 1963, 117.2(1) on June 29, 1984.[5] On appeal, the grant of summary judgment in favor of Dr. Genoves-Andrews was reversed.[6] In addition, the grant of summary judgment in favor of the Department of Mental Health on the defective public building claim was also reversed.[7] On all other counts, summary judgment was affirmed.

An application for leave to appeal to this Court was filed by defendants. In lieu of granting leave, we remanded the case to the Court of Appeals for reconsideration in light of *Canon v Thumudo*, 430 Mich 326; 422 NW2d 688 (1988), *Reardon v Dep't of Mental Health*, 430 Mich 398; 424 NW2d 248 (1988), and *Smith v Dep't of Public Health*, 428 Mich 540; 410 NW2d 749 (1987).[8] On remand, the Court of Appeals modified its earlier opinion regarding the grant of summary judgment in favor of the Department of Mental Health. Specifically, the Court upheld the grant of summary judgment on that portion of plain-

---

[4] Plaintiffs asserted five theories of recovery against the Department of Mental Health. Plaintiffs' claims included allegations of violations under an intentional nuisance theory, 42 USC 1983, the Mental Health Code, the public building exception to governmental immunity, and implied contract theories. Each of the plaintiffs' five claims was dismissed on summary judgment.

[5] Plaintiffs asserted the following five theories of liability against Dr. Genoves-Andrews: ordinary negligence, intentional nuisance, violations of 42 USC 1983, violations of MCL 330.1722; MSA 14.800(722) for abuse of a mental health service recipient, and allegations that the defendant acted in an intentional, gross, wilful, wanton, and reckless manner.

[6] The reversal pertained only to the § 1983 claim against Dr. Genoves-Andrews.

[7] 161 Mich App 245; 410 NW2d 803 (1987).

[8] 430 Mich 894 (1988).

tiffs' claim that related to the defendant's failure to design the restroom in a manner that would allow proper observation and supervision of patients.[9] The Court found, however, that plaintiffs' allegation that the restroom design was dangerous or defective in light of the suicidal tendencies of its users was sufficient to withstand summary judgment. In all other respects, the Court upheld its previous ruling.

On remand from the Court of Appeals, the defendants moved for summary disposition pursuant to MCR 2.116(C)(10). That motion was denied on August 6, 1992. On defendants' motion for reconsideration, the trial court reversed itself and granted summary disposition for both defendants. After remand, the Court of Appeals affirmed,[10] and we granted leave to appeal.[11] Plaintiffs do not appeal the order granting Dr.

---

[9] The Court noted that this allegation failed to state a claim of a defective condition in the building itself. 179 Mich App 661; 446 NW2d 538 (1989).

[10] The Court of Appeals observed that its previous determination that the complaint stated a claim of a building defect was the law of the case. It then held:

Plaintiffs characterize defendant's argument as meaning that where a plaintiff has alleged a defective building claim, a defendant can "immunize itself by showing that heroic and extraordinary supervision would have averted the injury." We express no opinion on the validity of this proposition generally because the undisputed evidence demonstrates that the necessary supervision in this case would not have been "heroic and extraordinary." Plaintiffs' decedent had been subject to one-to-one supervision for six days. In response to defendants' motion, plaintiff presented no evidence to indicate that continuation of this type of supervision would have been "heroic and extraordinary."

Because the undisputed evidence indicates that proper supervision would have offset any shortcomings in the configuration of the room, summary disposition was properly granted on the building design defect claim. [Unpublished opinion per curiam, issued November 29, 1994 (Docket No. 158052), slip op at 2.]

[11] 452 Mich 866 (1996).

Genoves-Andrews' summary disposition. Accordingly, the only issue before this Court is whether defendant Department of Mental Health was properly granted summary disposition where it was concluded that proper supervision would have offset shortcomings in the configuration of the room.

II

The issue before us is not whether a defect in the building actually existed or whether, if a defect did exist, the defendant's actions were the legal or factual cause of the decedent's death. Plaintiffs contend that a defect did exist and the Court of Appeals did not revisit this question. Instead, the sole issue on appeal is whether the defense of proper supervision bars a true building defect claim. Defendant concedes that, as the common restroom for the ward, the restroom was to be used by suicidal patients. Defendant contends, however, that because the restroom was never assigned to be suicide proof, and reasonable supervision could have prevented the suicide, there was no building defect.[12] The argument is as follows: where a

---

[12] Defendant has relied in part on 179 Mich App 669-670, n 9 *supra*, in which the Court stated:

We are aware that in *Schafer v Ethridge* [430 Mich 398; 424 NW2d 248 (1988)] . . . the Court . . . [found that] "proper supervision . . . would have offset any shortcomings in the configuration of the room." The instant case, however, was decided in a motion made pursuant to GCR 1963, 117.2(1) [MCR 2.116(C)(8)], which is to be granted only if the claim, viewed in light of the allegations of the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. . . . At this relatively premature stage of the proceedings, we are not inclined to draw essentially factual conclusions that more extensive supervisory measures could have been reasonably implemented and that such measures would have prevented the decedent's suicide.

known suicidal patient in a psychiatric hospital uses a room that was not specifically assigned to hold actively suicidal patients without supervision, would proper supervision have prevented the suicide? If the answer is yes, the public building exception does not apply and the government entity is shielded from liability under the state immunity statute, even if a defect did exist.[13] The Court of Appeals concluded that "[b]ecause the undisputed evidence indicates that proper supervision would have offset any shortcomings in the configuration of the room, summary disposition was properly granted on the building design defect claim."[14] In our view, this holding blurs the distinction between those claims that allege mere negligence and those that allege a true building defect. Accordingly, we reverse the decision of the Court of Appeals.

III

A motion brought pursuant to MCR 2.116(C)(10) examines the factual basis for a claim and may be granted only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[15] In reviewing a motion brought pursuant to MCR 2.116(C)(10), the court may properly consider supporting affidavits or other documentary evidence outside the pleadings, drawing all reasonable inferences in the nonmovant's favor.

---

[13] Defendant contends that it does not mean to imply that additional supervision in all circumstances will negate a true building defect. It does argue, however, that additional supervision will negate a true building-defect claim where a room, not assigned to be used by actively suicidal patients without supervision, is so used.

[14] Docket No. 158052, n 10 *supra* at 2.

[15] *Velmer v Baraga Area Schools*, 430 Mich 385; 424 NW2d 770 (1988).

*Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994).

IV

The governmental immunity statute affords significant immunity from tort liability arising from activities in which the governmental agency was engaged in the performance of a governmental function. MCL 691.1407(1);    MSA 3.996(107)(1).[16] Five narrowly drawn exceptions exist to limit this broad grant of immunity, including the public building exception.[17] Under the public building exception, governmental agencies have a duty to repair and maintain public buildings under their control when those buildings are open for use by the public.[18] Liability arises when

---

[16] The act provides:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

[17] MCL 691.1406;    MSA 3.996(106).    See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984).    The other four exceptions concern maintenance of public highways, MCL 691.1402;    MSA 3.996(102);    negligent operation of a government-owned motor vehicle by an officer or agent, MCL 691.1405;    MSA 3.996(105);    performance of proprietary functions by government entities, MCL 691.1413;    MSA 3.996(113); and ownership or operation of a government hospital, MCL 691.1407(4); MSA 3.996(107)(4).    The last exception does not include hospitals owned or operated by the Department of Mental Health. MCL 691.1407(4)(b); MSA 3.996(107)(4)(b).

[18] MCL 691.1406;    MSA 3.996(106)  provides in part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had

injuries are caused by a dangerous or defective condition in the building itself.[19] Whether the physical condition of a given room is dangerous or defective must be determined in light of the uses or activities for which the room was specifically assigned. *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 422; 487 NW2d 106 (1992).[20]

V

This Court has held that as long as a physical defect in the building itself coincided to cause the injury, the government entity may be liable under the public building exception even if negligent supervision was involved.[21] In *Bush v Oscoda Area Schools*, 405 Mich 716; 275 NW2d 268 (1979), the majority concluded that the plaintiff stated a claim under the public building exception, despite the fact that allegations of negligent supervision also were made. There, the plaintiff's child sustained injuries when an explo-

---

actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

[19] *Reardon, supra* at 409.

[20] For a comprehensive discussion of governmental immunity, see Antieau & Mecham, Tort Liability of Government Officers and Employees. See also Dennehy & Hammond, *Government law, 1987 annual survey of Michigan law*, 34 Wayne L R 837 (1988); Stancyzk, *Government law, 1988 annual survey of Michigan law*, 35 Wayne L R 653 (1989); Ross, *Government law, 1992 annual survey of Michigan law*, 39 Wayne L R 799 (1993).

[21] See 2 Torts, Michigan Law & Practice, § 20.28, p 20-30, and Braden, *Liability for defective public buildings*, 72 Mich B J 1144, 1146 (1993). See also *Dedes v Asch*, 446 Mich 99; 521 NW2d 488 (1994) (the Legislature did not intend to eliminate recovery where more than one tortfeasor contributed to the plaintiff's injury when it used the term "the" before the words "proximate cause" in the governmental immunity statute, MCL 691.1407[2][c]; MSA 3.996[107][2][c]).

sion rocked a public school classroom. In her suit for
damages, the plaintiff alleged that the injuries arose
out of the defendant's failure to supervise, coupled
with a lack of safety equipment in the classroom.[22]
The majority held that the plaintiff had stated a claim
under the public building exception to the govern-
mental immunity statute.

Likewise, in *Williamson v Dep't of Mental Health*,
176 Mich App 752, 758; 440 NW2d 97 (1989),  the
Court of Appeals concluded that a defect in the
defendant's building existed, despite the fact that
improper supervision was also a contributing cause of
the decedent's death. The Court opined that

> [w]hile it is true that cases which involve nothing more
> than improper or inadequate supervision do not make out a
> case under the building exception to governmental immu-
> nity, we disagree with defendant's contention that this case
> is one involving *only* improper supervision. We believe that
> the facts of this case involve a building defect as well. [*Id.*]

The assertion that "proper supervision would have
offset any shortcomings in the configuration of the
room" was first pronounced in *Reardon, supra* at 417.
In *Reardon*, a nursing student sought damages for a
sexual assault she suffered while occupying a room in
the defendant's dormitory. The crux of plaintiff's com-
plaint was that her dormitory room was unsafe
because numerous master keys were in circulation. In
a companion case, *Schafer v Ethridge*, a mentally
retarded resident of a state facility was sexually
assaulted and impregnated. The substance of this
complaint was that the layout of the facility created a

---

[22] *Bush, supra* at 735-736, n 3.

dangerous or defective condition in the building because it hindered staff supervision. Finding that neither case involved an injury caused by a condition of the building as used for its intended purpose, the majority concluded that the public building exception did not apply. *Id.* at 400.

In *Reardon* and *Schafer*, sexual assaults on a student and patient were found not to state a claim in avoidance of governmental immunity because the building, which was being used for its intended purpose, was not defective.[23] Unlike *Bush* and *Williamson*, in which defects in the buildings were allegedly contributing causes of the injuries, the consolidated cases of *Reardon* and *Schafer* involved nothing more than mere negligence.[24] It is in this context that the Court in *Schafer* declared that "proper supervision would have offset any shortcomings in the configuration of the room." *Id.* at 417.

In *Hickey, supra,* the plaintiff contended that the improper design of the facility impeded supervision resulting in a dangerous or defective condition in the building. The plaintiff's son committed suicide in a Michigan State University Department of Public Safety holding cell where he was held after being arrested for driving under the influence of intoxicat-

---

[23] In *Reardon*, there was no evidence that the door lock was broken or otherwise defective or dangerous. Instead, the Court noted that the door lock functioned exactly as it was intended to function. *Id.* at 415. In *Schafer*, the Court found that there was no evidence that the pillars were unsafe or defective. *Id.* at 417.

[24] In *Bush, supra,* the Court did not find that a true building defect existed, only that the plaintiff had stated a claim of a building defect sufficient to defeat the defendant's motion for summary disposition. In *Williamson, supra,* the Court found that a defect in the building itself was a proximate cause of the decedent's death.

ing liquor.[25] None of the decedent's personal effects were removed when he was placed in the cell. By fashioning his belt and socks into a noose, the decedent hanged himself from one of four metal brackets that attached a heating unit to the wall. The question was whether a dangerous or defective condition existed in the holding cell.[26]

Three arguments were advanced in support of the plaintiff's contention that the public building exception was applicable. First, the plaintiff alleged that the holding cell's improper design created a dangerous or defective condition because it prevented proper supervision. Next, the plaintiff alleged that the lack of state-of-the-art equipment in the cell created a dangerous or defective condition. Third, the plaintiff asserted that the heating unit and metal brackets created a dangerous or defective condition because they were improperly placed. The Court concluded that the claim against Michigan State University was barred by governmental immunity.[27] Regarding the improper design allegation as a dangerous or defective condition, we rejected the plaintiff's effort to posit the defect on a negligent supervision allegation, saying

a claim based on the inability to observe Hickey because of the structural design of the DPS is an insufficient basis on

---

[25] MCL 257.625a; MSA 9.2325(1).

[26] *Hickey, supra* at 421.

[27] The Court postulated that evidence that the facility was not up to date or the most modern of possible designs was insufficient to establish a dangerous or defective condition in the building itself. *Id.* at 424. Additionally, by broadly defining the use to which the cell was assigned, the Court concluded that the placement of the heating unit and metal brackets did not render the cell dangerous or defective. *Id.* at 425-427. See also Ross, n 20 *supra* at 813-814.

> which to apply the public building exception. Before a
> claim under a building design defect can support invoking
> the immunity exception, such a design must more directly
> cause the injury at issue. [*Id.* at 424.]

With no defect in the building itself having been
found, the Court explained that "more effective super-
vision would have overcome this alleged design
defect in the holding cell." *Id.*

More recently, in *Jackson v Detroit*, 449 Mich 420;
537 NW2d 151 (1995), the "proper supervision" lan-
guage was again referenced. Finding that the plain-
tiff's claim involved safety in a public building rather
than the safety of a public building, we concluded
that the claim did not come within the confines of the
public building exception. Although it was stated that
"where proper supervision would have 'offset any
shortcomings in the configuration of the room,' the
public building exception does not apply,"[28] it is clear
that the proper supervision language was merely
another way of explaining that because the gravamen
of the complaint was negligent supervision, the plain-
tiff had not alleged a dangerous or defective condi-
tion of the building itself.

Plaintiffs correctly acknowledge that where the
essence of a tort claim is negligent supervision, a
plaintiff cannot transform the claim into a building-
defect claim merely because a superior building
design would have improved the ability to supervise.
Similarly, where the essence of a tort claim is a defec-
tive building under the public building exception,
summary disposition may not be granted simply by

---

[28] *Id.* at 428.

claiming that proper supervision would have averted the injury.[29]

Despite the oft-cited proposition that a public building may be dangerous or defective because of its improper design,[30] the issue whether a design defect may actually constitute a defect in a public building sufficient to invoke the public building exception has caused this Court considerable difficulty. Nonetheless, that issue is not before this Court. In the present case, the plaintiffs have alleged that a dangerous or defective condition existed in the building itself. We hold that the plaintiffs were not required to "present evidence that more extensive supervision could not have prevented the suicide or that such supervision could not have been reasonably implemented"[31] in order to defeat the defendant's motion for summary disposition. This is not to say that a question of fact remains regarding the existence of a true building defect or that the defendant might not be entitled to judgment as a matter of law on the question whether a true building defect existed.[32] We are saying, how-

---

[29] Plaintiffs' assert that one-to-one supervision of the decedent would have been extraordinary and that a defendant can not " 'immunize itself by showing that heroic and extraordinary supervision would have averted the injury.' " Docket No. 158052, n 10 *supra* at 2. We agree. Where a defective condition in the building has been alleged, heroic and extraordinary supervision will also not act to bar the defective building claim.

[30] *Hickey, supra* at 422.

[31] Docket No. 158052, n 10 *supra*.

[32] In this opinion we reverse the Court of Appeals determination that a defense of proper supervision can defeat a building defect claim under the public building exception to governmental immunity. In its November 29, 1994, opinion, the Court of Appeals held that it was bound by the law of the case regarding whether plaintiffs' pleadings sufficiently alleged a claim within the public building exception to governmental immunity. We are, however, unable to determine whether the Court of Appeals evaluated the parties' allegations and supporting affidavits under MCR 2.116(C)(10) as opposed to MCR 2.116(C)(8). For that reason, we do not apply the law of

ever, that the defense that proper supervision would have prevented the injury does not negate the allegation of a true building defect so as to permit the conclusion that there is no question of material fact regarding the existence of a defect. Accordingly, we reverse the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

VI

For the reasons stated above, the decision of the Court of Appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

MALLETT, C.J., and BRICKLEY, CAVANAGH, and KELLY, JJ., concurred with BOYLE, J.

---

the case doctrine to the question whether a genuine issue of material fact existed. Therefore, we do not foreclose the trial court's ability on remand to grant judgment as a matter of law regarding whether a building defect existed, nor do we compel the trial court to hold that the defendant is entitled to judgment as a matter of law regarding whether a building defect existed. We simply express no opinion on this matter because it has not been fully briefed or argued to this Court.

In its October 8, 1992, motion for reconsideration and order granting summary disposition, the trial court explained:

In the instant case, as in *Hickey* there is no defect or failure of a structure in light of the pectific [sic, specific] use and purpose for which it was assigned. The bathroom stall was supported by an overhead bar. This bar did not fail in its purpose. And its mere presence does not constitute a building defect. At most there may have been negligence in designing such a bathroom stall for its use in a mental institution. . . . This possible negligence however, does not create an inherent building danger or defect which would trigger the public building exception to governmental immunity.

Because we do not know from the materials before this Court on what basis the trial court made this statement, we do not endorse nor do we foreclose the trial court's ability to stand by the statement on remand.

RILEY, J. (*dissenting*). Although I agree with the majority that a defense of proper supervision should not bar a claim of a true building defect under the public building exception to governmental immunity, I do not believe that plaintiffs pleaded a claim of a building defect that inhered in the building itself. The majority wrongly refused to address this argument, claiming that it is "not before this Court," see *ante*, p 96, despite the fact that defendant preserved this contention and argued it on appeal. I would reach this issue and conclude that there was no building defect as a matter of law. Hence, I would affirm the Court of Appeals decision to uphold the trial court's grant of summary disposition in favor of defendant.

ANALYSIS

I. PUBLIC BUILDING EXCEPTION

As the majority properly notes, see *ante*, pp 90-91, a governmental agency is immune from tort liability under MCL 691.1407(1); MSA 3.996(107)(1) for actions taken while performing governmental functions. *Jackson v Detroit*, 449 Mich 420, 427; 537 NW2d 151 (1995). This broad immunity is subject to a number of narrowly drawn exceptions, including an exception for public buildings under MCL 691.1406; MSA 3.996(106). Section 106 provides in pertinent part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action

reasonably necessary to protect the public against the condition.

This Court has established a five-part test to determine whether the public building exception governs a particular case. A plaintiff must prove:

(1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period of time. [*Jackson, supra* at 428, citing *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 421; 487 NW2d 106 (1992).]

The duty relates to the dangers presented by the *building itself. Jackson, supra* at 428. The purpose of the public building exception is to promote the maintenance of safe public buildings, not to provide for safety in public buildings. *Id.* A public building may be dangerous or defective where there is an improper design, faulty construction, or the absence of safety features. *Hickey, supra* at 422, citing *Bush v Oscoda Area Schools*, 405 Mich 716, 730; 275 NW2d 268 (1979). However, a court must look to the uses or activities for which that part of the building is assigned to determine if a dangerous or defective condition exists. *Id.* The question is whether the physical condition was dangerous or defective under the circumstances presented. *Hickey, supra* at 422, citing *Reardon v Dep't of Mental Health*, 430 Mich 398, 410-411; 424 NW2d 248 (1988).

We have also stated on several occasions that where proper supervision would have eliminated the

alleged defects in the design of the building, the public building exception does not apply. See *Jackson, supra* at 428,[1] quoting *Hickey, supra* at 426.[2] See also the companion case to *Reardon, Schafer v Ethridge, supra* at 417.[3] I agree with the majority's decision to repudiate this principle because the issue whether there is a valid claim of a building defect under the public building exception is a separate matter from whether proper supervision would have prevented the alleged injury from occurring. *Ante*, p 95. Even if the governmental agency was negligent in failing to provide proper supervision, the injured party would bring a valid claim under the public building exception if the building's dangerous or defective condition also caused the injury to occur. There may be multiple causes for an injury. See *id.*, pp 91-92, citing *Williamson v Dep't of Mental Health*, 176 Mich App 752, 758; 440 NW2d 97 (1989). The majority's analysis persuasively demonstrates that in each case in which this

---

[1] In *Jackson, supra* at 428, this Court stated:

[W]here proper supervision would have "offset any shortcomings in the configuration of the room," the public building exception does not apply. [Quoting *Hickey, supra* at 422.]

[2] In *Hickey, supra* at 422, this Court stated:

[W]e *held* [in *Schafer v Ethridge*, 430 Mich 398, 417; 424 NW2d 248 (1988)] that where proper supervision would have "offset any shortcomings in the configuration of the room," the public building exception does not apply. [Emphasis added.]

[3] In the companion case to *Reardon, Schafer v Ethridge, supra* at 417, this Court distinguished a previous Supreme Court case:

As distinguished from *Bush*, where no amount of supervision would have compensated for the lack of safety features, proper supervision would have offset any shortcomings in the configuration of the room.

Court stated that proper supervision would have elim-
inated the "shortcomings" of the building, we did so
only where there was no defect in the building itself
as a matter of law. See *ante*, pp 92-95. Hence, this
Court's statements regarding the role of proper super-
vision in public building defect cases were dicta, and
I join in the majority's decision to set the principle
aside.

II. *DE SANCHEZ*—THE MAJORITY'S DECISION NOT TO ADDRESS
DEFENDANT'S CLAIM THAT THERE WAS NO BUILDING DEFECT

In the instant case, plaintiffs contend that there
was a design defect in the psychiatric hospital's rest-
room where there was a toilet stall that contained an
overhead dividing bar from which decedent hanged
himself while he was unsupervised.[4] At the trial court
level, defendant moved for summary disposition,
arguing that the allegations really amounted to a
claim of lack of supervision, not a defect in a public
building. The trial court originally granted defendant's
motion for summary disposition on the basis that
plaintiffs failed to allege a building defect. The Court
of Appeals reversed this ruling. See 161 Mich App
245, 253; 410 NW2d 803 (1987).[5] On defendant's

---

[4] In the complaint against defendant Michigan Department of Health,
plaintiffs alleged, among other claims, that defendant violated its duties to
the decedent:

   (16)(k) In the Defendant failing to properly design its restrooms
   by installing bathroom stalls within the Ypsilanti Regional Psychiat-
   ric Hospital that had dividing bars across the top of said bathroom
   stalls, which would allow in-patients such as the decedent to make
   suicide attempts by trying to han[g] themselves from said dividing
   bars, when the Defendant knew, or in the exercise of reasonable
   care should have known, that such design defects would cause
   serious harm and death to the decedent . . . .

[5] The Court of Appeals stated:

appeal from this ruling to this Court, we remanded to
the Court of Appeals for reconsideration in light of
*Reardon* among other cases. 430 Mich 894 (1988).
The Court of Appeals then affirmed its decision on
the issue whether plaintiffs adequately pleaded a
claim of design defect, but remanded to the trial
court for further proceedings on the issue whether
proper supervision, as stated in *Reardon*, would have
offset the alleged defect. See 179 Mich App 661, 669-
670; 446 NW2d 538 (1989).[6] On remand from the
Court of Appeals, the trial court granted summary dis-
position for defendant because proper supervision
would have offset any of the shortcomings of the con-
figuration of the room, and the Court of Appeals
affirmed. In affirming, the Court of Appeals again

---

We conclude that plaintiffs' complaint in the Court of Claims suf-
ficiently pled facts in avoidance of immunity under the defective
buildings exception by alleging a structural defect in the hospital in
light of the uses or activities for which the wards in the hospital
were specifically designed. [*Id.* at 252-253.]

[6] In reaffirming its decision on the adequacy of the pleadings for the
building defect claim, the Court of Appeals stated:

[W]e are persuaded that our earlier decision upholding the sec-
ond allegation—the dangerous condition resulting from the dividing
bars placed over bathroom stalls—remains correct in light of *Rear-
don*. Given that the rest room was assigned for use by potentially
suicidal patients at a mental hospital, this condition was potentially
dangerous in and of itself. Because the dangerous condition was
inherent in the structure of the stall, we believe that a sufficient
allegation concerning the defective nature of the building has been
pled.

The Court reversed its decision with regard to the first allegation, i.e., that
there was a failure to design the restroom so that patients may be
observed by staff, because the Court concluded that the allegation failed
to raise a claim that there was a defective condition in the building itself.
*Id.* at 668.

noted its previous decision that there was an adequately pleaded complaint:

> There is no indication that the design of the stall posed a danger when used as it was intended. When this Court previously reviewed this case, the question was whether, in light of the assigned use of the room for the population of the mental hospital, the design was dangerous or defective because the overhead bar afforded a person bent on committing suicide an implement which could be misused to accomplish that intention. In our earlier opinions in this case, this Court determined plaintiffs' allegations sufficiently alleged a claim within the building exception to governmental immunity, MCL 691.1406; MSA 3.996(106). We are bound by the law of the case to accept this conclusion. [Unpublished per curiam opinion of the Court of Appeals, decided November 29, 1994 (Docket No. 158052).]

Hence, the Court of Appeals has ruled against defendant on three occasions on the issue of the adequacy of plaintiffs' allegations pursuant to MCR 2.116(C)(8) that there was a building defect under the public building exception.

On plaintiffs' appeal from that decision, the majority claims that because "the issue whether a defect existed was not fully briefed or argued," it is unable on appeal to determine whether a building defect existed as a matter of law. See *ante*, p 85, n 1. The majority seeks to avoid the question whether plaintiffs have adequately alleged whether there was a building defect in the instant case so that, instead, it may solely answer defendant's response regarding proper supervision. These inquiries, however, cannot be isolated from one another. The only circumstances in which this Court has referred to the fact that proper supervision may defeat a claim of a building defect has been in cases in which this Court was

resolving whether there was a dangerous or defective condition in a building under the public building exception to governmental immunity. See *Jackson, supra* at 429 ("the only question presented by this case is whether a dangerous or defective condition existed"); *Hickey, supra* at 422-423. There is no support for the majority's decision to isolate the question whether there was a properly alleged building defect from the question whether proper supervision would have eliminated an alleged shortcoming.

In remanding this case to the trial court, the majority provides that the trial court may grant summary disposition to defendant under MCR 2.116(C)(10) if, on remand, the court continues to believe that the overhead bar in the restroom " 'did not fail in its purpose' " and that " 'its mere presence does not constitute a building defect.' " *Ante*, p 97, n 32, quoting the trial court's October 8, 1992, order. However, the majority is leaving unchanged the three Court of Appeals decisions, two of which were published, in which that Court concluded that there was an adequate allegation of a dangerous condition in the building under MCR 2.116(C)(8). See 161 Mich App 245, 249-253; 410 NW2d 803 (1987), 179 Mich App 661, 667-669; 446 NW2d 538 (1989), and unpublished per curiam opinion (Docket No. 158052). On remand, the trial court is bound under the law of the case to adhere to these three Court of Appeals decisions. The trial court is still bound because the majority has not vacated these earlier decisions. See *Johnson v White*, 430 Mich 47, 52-53; 420 NW2d 87 (1988).[7] Although these decisions would not bind the trial court with

---

[7] In *Johnson, supra* at 52-53, this Court stated:

regard to a motion under MCR 2.116(C)(10) for summary disposition, I believe that if this Court is interested in receiving further briefing and argument before deciding the question whether there is an issue for the trier of fact on plaintiffs' building defect claim, this Court should specifically remand the issue to the trial court and vacate the three outstanding decisions of the Court of Appeals under MCR 2.116(C)(8) so that the trial court may examine the issue under MCR 2.116(C)(8) or MCR 2.116(C)(10) unfettered from past decisions.

Moreover, I do not believe that a remand is necessary. This case was begun in March 1984 and has been to the Court of Appeals three times already. There is no dispute about the factual record. The trial court has issued an opinion on the question whether there was a building defect as a matter of law. See *ante*, p 96, n 32. I believe this issue is properly before this Court and that we should address it now, not three years from now when it returns on appeal.

### III. *DE SANCHEZ*—BUILDING DEFECT

I believe that the restroom was neither dangerous nor defective as a matter of law in light of its intended use as a restroom for patients in a psychiatric hospital. There was no actual defect in the physical condition of the room itself. Rather, the decedent was using the restroom for something other than its

---

As a general rule, an adjudication on an issue in the first appeal is the law of the case in all subsequent appeals in which the facts are substantially the same. . . . Rulings of [an] intermediate appellate court . . . *remain the law of the case* insofar as they are not affected by the opinion of the higher court reviewing the lower court's determination. [Emphasis added.]

intended function when he hanged himself on the dividing bar inside the toilet stall.[8]

In examining plaintiffs' complaint, plaintiffs suggest a broader purpose for the psychiatric hospital's restroom than merely the general purpose of any restroom, but that, because it is a psychiatric hospital, it is a room that should be safe for suicidal patients. On appeal, plaintiffs argue that the facts of this case are more analogous to the facts of *Lockaby v Wayne Co*, 406 Mich 65; 276 NW2d 1 (1979), than to *Hickey*. In *Lockaby, supra* at 74, n 1, a prisoner knocked himself unconscious in the Wayne County jail causing himself spinal injury resulting in a total paralysis of his body below the neck. The plaintiff alleged that the cell was defectively designed because the jail failed to provide sufficient padding for a cell that was *designated for "mental" inmates. Id.* at 74-75.[9] In *Hickey, supra* at 415-416, a man was arrested by an officer of the Michigan State University Department of Public Safety for intoxicated driving and was ultimately placed in a holding cell at the Department of Public Safety. The man soon afterward committed suicide by hanging himself with his own belt from one of the four metal brackets that held a heater and extended one or two

---

[8] Defendants originally brought their motion for summary disposition pursuant to GCR 1963, 117.2(1), the precursor of MCR 2.116(C)(8). Under MCR 2.116(C)(8), a motion for summary disposition is tested on the pleadings alone, and all factual allegations contained in the complaint must be accepted as true. *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). A trial court should grant this motion only where the claim is so unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.*

[9] In three opinions, this Court reversed the trial court's decision to grant summary disposition in favor of Wayne County by concluding that this was a claim that came under the public building exception. *Id.* at 76-77 (LEVIN, J., plurality opinion), 81-82 (WILLIAMS, J., concurring), 84 (BLAIR MOODY, JR., J., concurring).

inches from the wall. We noted that the temporary lockup for arrestees was specifically used and assigned for only temporary detention. *Id.* at 426.[10]

We should reject plaintiffs' argument because the better analogy to the instant case is the recent decision, *Jackson,* a case that plaintiffs neglected to brief, also involving an attempted suicide in a public building. In *Jackson, supra* at 423-424, Louis Jackson was arrested for intoxicated driving and placed in a cell of a police station in the City of Detroit. Jackson attempted to commit suicide by hanging himself from the exposed overhead bars of his cell with some material, possibly his pants. This Court concluded that the suicide attempt did not come within the public building exception:

> Jackson's suicide attempt does not relate to the maintenance of a safe building for the specific use and purpose for which it was assigned. *It relates to safety in public buildings,* and thus does not come within the narrow confines of the public building exception to governmental immunity. [*Id.* at 429 (emphasis added).]

Like the instant case, the employees of the police station knew that Jackson was suicidal. However, unlike this case, there had been a significant number of attempted suicides in that very police station (thirteen attempts over the previous four years). See *id.* at 429, n 12.[11] Nevertheless, we decided that there was

---

[10] This Court concluded that there was no building defect as a matter of law. *Id.* at 427.

[11] The Court stated in *Jackson* that "the officers involved were on notice both that the cell could be dangerous, as evidenced by numerous successful and attempted suicides, and that this particular detainee was in fact suicidal." There were 128 suicide attempts in Detroit police lockups between 1978 and 1983, and there were thirteen attempts in the seventh

no genuine issue of material fact regarding whether the City of Detroit was subject to liability.[12]

The Court's reasoning in *Jackson* is equally applicable to plaintiffs' claim here, particularly where one replaces the restroom stall in the psychiatric hospital for a jail cell in the police station:

> "To suggest that any physical feature of a jail cell, otherwise benign, that can conceivably become part of a plan of one who is desperately driven to self destruction can become a 'dangerous or defective condition' under the public building exception statute, simply crosses the outer limits of any reasonable reading of the intent of that statute when considered in the context of its history, purpose, and wording." [*Jackson, supra* at 429, quoting *Hickey* at 426.]

In the instant case, as in *Jackson*, there was no dispute that suicidal persons would use this restroom, but that these were not the only people who would use the room. This really is only a claim of negligence. Like *Jackson*, I would conclude in the instant case that defendant was not subject to liability as a matter of law. There is no valid claim for a building defect as a matter of law under the public building exception to governmental immunity for an allegation of a design defect where the building was not used for its intended purposes and there was no actual physical defect in the building itself.

---

precinct station alone from June 1980 to December 1984. Jackson attempted to commit suicide in the seventh precinct in December 1984. *Id.* at 423-424.

   [12] The defendant's motion for summary disposition in *Jackson* was brought pursuant to MCR 2.116(C)(10), not MCR 2.116(C)(8). *Id.* at 425. Nevertheless, I believe that this analysis is relevant for the inquiry whether plaintiffs' complaint alleged a valid claim of a building defect under MCR 2.116(C)(8).

CONCLUSION

Although for different reasons than those given by the Court of Appeals, I would affirm the trial court's decision to grant defendant summary disposition.

WEAVER, J., concurred with RILEY, J.