**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED SEPTEMBER 11, 2002**

FRANCINE CULLARI de SANCHEZ and
STEVEN JASON, co-personal
representatives of the estate of
Thomas A. Baltus, deceased,

     Plaintiffs-Appellees,

v                               No. 117298

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF MENTAL HEALTH,

     Defendant-Appellant.
_____

PER CURIAM

     The plaintiffs' decedent, an involuntary patient in a state psychiatric hospital, committed suicide in a hospital restroom. Plaintiffs, the personal representatives of decedent's estate, filed a wrongful death suit, alleging that the overhead bar from which decedent hanged himself was a "dangerous or defective condition of a public building." If proved, that allegation would bring the plaintiffs' claim

within the public building exception to the defendant's governmental immunity. MCL 691.1406 and 691.1407(1).

The plaintiffs filed this Court of Claims lawsuit in 1984. On two previous occasions, the Court of Claims granted summary disposition to defendant, but those judgments were reversed or vacated on appeal.[1]

In 1998, the Court of Claims once again granted summary disposition to defendant, upon the bases of governmental immunity and MCR 2.116(C)(10). The judge ruled that plaintiffs failed to establish a genuine issue of material fact about any "dangerous or defective condition."

The Court of Appeals again reversed the grant of summary disposition.[2] Defendant's appeal was held in abeyance for *Brown* v *Genesee Co Bd of Comm'rs (After Remand)*, 464 Mich 430; 628 NW2d 471 (2001). We now reverse the Court of Appeals and reinstate the Court of Claims judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND

In 1983, Thomas Baltus attempted suicide by trying to drown himself. After that failed attempt was discovered, Baltus was involuntarily committed to the Ypsilanti Regional Psychiatric Hospital. Hospital personnel observed Baltus continuously for more than five days. His behavior during

---

[1] Sub nom *de Sanchez* v *Genoves-Andrews*, 161 Mich App 245; 410 NW2d 803 (1987), rem'd 430 Mich 894(1988), (*On Remand*) 179 Mich App 661 (1989), and *de Sanchez* v *Dep't of Mental Health (After Remand)*, 455 Mich 83; 565 NW2d 358 (1997).

[2] *de Sanchez* v *Dep't of Mental Health*, unpublished opinion per curiam, issued June 30, 2000 (Docket No. 214318).

2

that time persuaded them that continuous monitoring was no longer necessary and that periodic monitoring would be an adequate suicide precaution.  The next day, allowed to use the restroom unattended, Baltus hanged himself.  He used a cloth belt, which he attached to an overhead bar that supported a partition between toilet stalls.

The plaintiffs' wrongful death complaint alleged that the support bar from which Baltus hanged himself constituted a "dangerous or defective condition of a public building," thus bringing the claim within the public building exception[3] to governmental immunity.[4]  Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), contending that no genuine issue of material fact existed regarding whether the

---

[3]

Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a *dangerous or defective condition of a public building* if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the *dangerous and defective condition of the public building* and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place. [MCL 691.1406 (emphasis added).]

[4]

Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. [MCL 691.1407.]

3

stall-partition support bar was a "defective condition." The trial court agreed and granted summary disposition.

The Court of Appeals reversed, holding that "plaintiffs presented evidence to create a genuine issue of material fact regarding whether the placement of a solid bar in the bathroom of the facility constituted a dangerous and defective condition . . . in light of the use for which the bathroom was specifically assigned, that is, for the use of potentially suicidal mentally ill patients." Slip op at 4.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support of a claim. After reviewing the evidence in a light most favorable to the nonmoving party, a trial court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. *Smith* v *Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999); *Hazle* v *Ford Motor Co*, 464 Mich 456; 628 NW2d 515 (2001).

## III. ANALYSIS

Resolution of the issue presented is controlled by *Jackson* v *Detroit*, 449 Mich 420; 537 NW2d 151 (1995).[5] In

---

[5] We held an earlier appeal in the present case in abeyance for *Jackson*. That abeyance was resolved by our decision in *de Sanchez v Dep't of Mental Health (After Remand)*, n 1 *supra*, in which we concluded that the defective condition issue was not then properly before us. *Id*. at 88.

4

*Jackson*, an inmate attempted to hang himself from the overhead bars of a police station holding cell. *Jackson* set forth what a plaintiff must prove in order to bring a case within the public building exception to governmental immunity:

> This Court [has] held that a five-part test determines whether the public building exception governs a particular case. To fall within the narrow confines of the exception, a plaintiff must prove that 1) a governmental agency is involved, 2) the public building in question is open for use by members of the public, 3) *a dangerous or defective condition of the public building itself exists*, 4) the governmental agency had actual or constructive knowledge of the alleged defect, and 5) the governmental agency failed to remedy the alleged defective condition after a reasonable period of time. [*Id.* at 428, citing *Hickey* v *Zezulka (On Resubmission)*, 439 Mich 408, 421; 487 NW2d 106 (1992) (emphasis added).]

The present appeal involves only the third part of that test: whether the stall-partition support bar was a dangerous or defective condition of the hospital building. The plaintiffs argue that a defect existed because the restroom was intended for use by psychiatric patients, including suicidal patients, and the support bar could be put to fatal use by a suicidal patient. However, the issue before us is not whether a suicide was foreseeable, but whether the restroom had a "dangerous or defective condition" as that term is used in MCL 691.1406.

In *Jackson*, the plaintiff presented evidence that Detroit Police Department detainees had made more than one hundred similar suicide attempts during the previous five years, *and* that the officers responsible for the *Jackson* detainee knew

5

that he had attempted to hang himself in the same precinct station just one day earlier. *Jackson, supra* at 423-425, 429, n 12. Thus, the dangers to confined persons generally and to the individual plaintiff were far more obvious in *Jackson* than in the present case. Nevertheless, *Jackson* held that the cell's overhead bars were not a "defective condition."[6]

Evidence of foreseeability is not necessarily evidence of a defect. As we said in our earlier decision in this very case, MCL 691.1407 confers broad immunity, and the building exception created by MCL 691.1406 is narrowly drawn. *de Sanchez* v *Mental Health Dep't*, 455 Mich 83, 90; 565 NW2d 358 (1997). Whether the physical condition of a room is defective depends on the uses for which the room was specifically assigned. *Id*. at 91. The present case involves a restroom used by mentally ill hospital patients, including patients who were suicidal. There is no evidence that the support bar at issue defectively supported the toilet stall partition or that it posed any danger to psychiatric patients generally. To paraphrase an observation made in *Jackson*,

---

[6] The dissent maintains that *Jackson* is distinguishable from the present case because "the building areas where the bars were installed were designed for significantly different uses." Slip op at 1. However, scrutiny of the facts in this case reveals more similarities than differences. In *Jackson*, the holding cell at issue was designed for the general prisoner population, *some* of whom were suicidal. In this case, the bathroom was designed and used by "mentally ill patients, *some* of whom were suicidal." (Emphasis added.) There is no evidence in the record suggesting that the bathroom was specifically designed for suicidal patients. Rather, similarly to *Jackson*, the restroom was designed for use by the general psychiatric population.

6

there was *nothing* wrong with the bathroom. "There was, however, something tragically wrong with the decedent." *Jackson*, *supra* at 428.

One person's self-destructive use of an otherwise benign stall-partition support bar does not transform that bar into a "defective condition." In *Jackson*, we observed that the purpose of the public building exception is to promote the maintenance of safe public buildings, not safety in public buildings. "Thus, where proper supervision would have 'offset any shortcomings in the configuration of the room,' the public building exception does not apply." *Id*. at 428, quoting *Hickey*, *supra* at 422. We noted that plaintiff's claim "is more closely related to *safety* in public buildings than it is to a *defect* in a public building." *Jackson, supra* at 429 (emphasis added). To illustrate that distinction, *Jackson* quoted again from *Hickey*.

> To suggest that any physical feature of a jail cell, otherwise benign, that can conceivably become part of a plan of one who is desperately driven to self destruction can become a 'dangerous or defective condition' under the public building exception statute, simply crosses the outer limits of any reasonable reading of the intent of that statute when considered in the context of its history, purpose, and wording. [*Jackson, supra* at 429; *Hickey, supra* at 426.]

Perhaps the present defendant could have designed the restroom without partition support bars. It is also arguable that the defendant's employees were too quick to decide that the plaintiffs' decedent no longer required continuous individual observation. But those "might haves" prove, at

7

most, only negligence. *Jackson*, which is on point both legally and factually, precludes finding that a self-destructive act transformed the otherwise benign stall-partition support bar into a "defective condition."[7]

For the reasons stated, we reverse the judgment of the Court of Appeals and reinstate the judgment of the Court of Claims. MCR 7.302(F)(1).

**CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.**

**CAVANAGH, J., concurs in the result only.**

---

[7] This case was held in abeyance for *Brown v Genessee Co Bd of Comm'rs (After Remand)*, 464 Mich 430; 628 NW2d 471(2001). However, because we conclude that the stall-partition support bar here did not constitute a "defective condition" within a public building, it is unnecessary to decide the applicability of *Brown* to the facts of this case.

8

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

FRANCINE CULLARI deSANCHEZ and
STEVEN JASON, copersonal
representatives of the estate of
Thomas A. Baltus, deceased,

    Plaintiffs-Appellees,

v                                    No. 117298

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF MENTAL HEALTH,

    Defendant-Appellant.
_____

KELLY, J. (*dissenting*).

I disagree with the majority's conclusion that this case is controlled by the holding in *Jackson v Detroit,* 449 Mich 420; 537 NW2d 151 (1995). Although both involve overhead bars from which a person hanged himself, a key difference is that the building areas where the bars were installed were designated for significantly different uses. In *Jackson* the overhead bar was in a prisoner holding cell designated for the general jail population. In this case, the room was designated exclusively for the care and treatment of persons

with mental diseases, including those with suicidal tendencies. It is the use to which the building area is put here that controls the determination whether a part of the building, such as an overhead bar, constitutes a dangerous and defective condition. See *Bush v Oscoda Area Schs*, 405 Mich 716, 730; 275 NW2d 268 (1979).

In the *Jackson* case, despite the fact that jail officials had notice of the potential for suicide in their holding cell, the vast majority of prisoners held there were not suicidal. See *Jackson, supra* at 424. The situation is quite different in a mental hospital. The majority states that "the dangers to confined persons generally and to the individual plaintiff were far more obvious in *Jackson* than in the present case." Slip op at 6. I believe a much more accurate statement is that the dangers were obvious in both cases, but far more likely to result in death in this case than in *Jackson*. And, in fact, that was the difference.

The majority errs, also, in reasoning that the current case involves a question of safety in a public building and not an unsafe building, itself. Plaintiffs' decedent had been involuntarily committed to the defendant's facility following an attempt to commit suicide. The bathroom in which he later did commit suicide was used by patients who were like him, mentally ill. In light of the use made of the room where it

2

was installed, the overhead bar that plaintiff's decedent used to support the noose cannot be characterized as a "benign physical feature." Rather, given the use, that rigid exposed overhead bar accessed for suicide had every potential for being a dangerous and defective condition of the building.

The majority has neglected to consider adequately the purposes for which the building area was specifically used. It has ignored precedent holding that an overhead metal bar might present a "safety in a building" question in one place, but be a "dangerous and defective condition" in another.

I would affirm the Court of Appeals decision reversing summary disposition in favor of defendant. Plaintiffs created a genuine issue of material fact regarding whether the placement of a solid, accessible overhead bar in an area housing suicidal mentally ill patients constituted a dangerous and defective condition within MCL 691.1406.