WILLIAMSON v DEPARTMENT OF MENTAL HEALTH

Docket No. 101129. Submitted October 18, 1988, at Detroit. Decided
    May 1, 1989. Leave to appeal applied for.

    Mary and Larry Williamson, as representatives of the estate of
        Clifton G. Williamson, and Mary Williamson personally
        brought an action in the Court of Claims against the Michigan
        Department of Mental Health, alleging that the death of Clif-
        ton Williamson by drowning at a resident treatment facility
        maintained by the department was proximately caused by a
        defect in the design of the bathing facilities which permitted
        the decedent to draw water in a bathtub and enter the bathtub
        unobserved. Defendant claimed that decedent's death was
        caused solely by the negligence of one of its employees in
        failing to properly supervise decedent's bathing and that, ac-
        cordingly, it was free from liability under the governmental
        immunity statute. The trial court, Norman L. Lippitt, J., while
        finding that decedent's death was caused, in part, by the
        negligence of the employee who let decedent enter the bathing
        area alone, also found that the design of the bathing area,
        including the plumbing arrangement that caused the tub water
        and the showers to be run at the same time, constituted a
        building defect within the building defect exception to statutory
        governmental immunity and was a proximate cause of dece-
        dent's death. The trial court found in favor of plaintiffs in the
        amount of $600,000 following reduction for decedent's contribu-
        tory negligence. Defendant appealed.

    The Court of Appeals held:

    The record supports the trial court's finding that the design
        of the bathing facilities constituted a defect in the building
        within the meaning of the building defect exception of the
        governmental immunity statute. The fact that the negligence of
        the attendant was also a proximate cause of decedent's death

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability,
    §§ 274 et seq.
See the Index to Annotations under Governmental Immunity or
    Privilege.

does not preclude a finding of liability under the building defect exception where the building defect is also a proximate cause.

Affirmed.

M. WARSHAWSKY, J., dissented. He would hold that the evidence failed to establish the existence of a defect in the building within the meaning of the statute. He would hold that the claim was barred by governmental immunity.

TORTS — GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS — PROXIMATE CAUSE.

The building defect exception to statutory governmental immunity is applicable where the Michigan Department of Mental Health at one of its resident treatment facilities maintained a plumbing system and bathing facilities which permitted a patient who should not because of his condition be permitted to take a tub bath without supervision to draw his own bath water and take an unsupervised tub bath where such bath results in the drowning of the patient; liability may attach under the building defect exception to statutory governmental immunity even where an injury or death is caused in part by the negligent supervision of a patient in a state facility if some physical defect in a public building is one of the proximate causes of the injury or death (MCL 691.1406; MSA 3.996[106]).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *David K. Barnes, Jr.*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Gary L. Finkbeiner,* Assistant Attorneys General, for defendant.

Before: SULLIVAN, P.J., and MURPHY and M. WARSHAWSKY,* JJ.

MURPHY, J. Defendant appeals as of right from the lower court's judgment in plaintiffs' favor. Plaintiffs prevailed in their wrongful death action brought against defendant pursuant to the building exception to governmental immunity. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiffs' decedent was a mildly retarded seventeen-year-old who suffered from uncontrolled and frequent epileptic seizures. Decedent was originally admitted to defendant's Fairlawn Center in 1972 at the age of nine. The facility is for emotionally disturbed children and adolescents. Later, he was transferred to Meadowview Three, an inpatient ward for older adolescents at the same facility.

On the morning of September 13, 1980, decedent asked Henry Bareiss, a childcare worker at Meadowview Three, if he could take a shower. Decedent was required to wear a helmet while showering because of his seizure disorder. If decedent wanted to take a bath, direct supervision was required. Bareiss testified that he gave decedent a towel, opened the door to the bath area and let decedent enter the room. Bareiss heard the shower water turn on and Bareiss proceeded to leave the immediate area to attend to other duties. Bareiss believed that decedent was taking a shower. He would not have let decedent take a bath alone. Meadowview Three had a shower and bath facility which consisted of one bathtub and three showers. The water for the showers and bathtub was controlled by a water valve box which was located in a recessed cabinet mounted in the wall of the shower and bath room.

Decedent's overall functioning level was equivalent to that of a fourth or fifth grader, although he read at a tenth grade level. Decedent understood that he was not to take a bath unsupervised.

At approximately 9:30 A.M. on September 13, 1980, decedent's mother, Mary Williamson, arrived at the facility to pick up her son. She testified that when she arrived Bareiss told her that decedent was "soaking in the tub." Bareiss denied making this statement. Apparently Bareiss had been su-

pervising other activities in the lounge near the shower room and had attended to another patient who needed to be escorted to his room. Bareiss went to get decedent and found him on his back under the water in the tub. Decedent was not wearing his helmet. Bareiss attempted to revive decedent but was unsuccessful. The autopsy report listed the cause of death as asphyxia due to drowning.

The chief of maintenance at Fairlawn Center testified how the water valve box in the bath and shower area operated. Both the main hot and cold water pipes went into a mixer so the water temperature was maintained at 110°F. Each of these main pipes had valves located before the mixer that were always left open. A main pipe carrying the temperature-controlled water left the mixer and this pipe had an on/off valve known as valve D. This valve was used by the staff and patients to turn on the water to the showers and bath. The pipe beyond valve D then branched off into four separate pipes; three went to the three showers and one pipe went to the bathtub. Each of these four pipes had on/off valves that were always left on. The pipe to the bathtub had a valve known as valve E. When the main valve D was turned on, water would run to all three showers and the bathtub. If the faucets at the bathtub were turned on, water would flow into the tub when the showers were on.

Decedent was permitted to turn on control valve D the morning he drowned.

Plaintiffs filed suit, alleging that decedent's death resulted from a dangerous or defective condition of a public building as provided for in the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106). Following a bench trial, the court found defendant liable under

the statute and the court assessed damages in plaintiffs' favor in the amount of $750,000. However, decedent was found to be twenty percent comparatively negligent thereby reducing the award to $600,000. Defendant now appeals as of right.

Defendant first contends that the trial court clearly erred in finding that the shower and bath facilities at Fairlawn Center constituted a dangerous and defective condition within the meaning of the building exception to governmental immunity. We disagree.

The public building exception to governmental immunity is codified at MCL 691.1406; MSA 3.996(106) and in pertinent part provides:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place.

The elements of proof under this exception are: (1) a defect, (2) actual or constructive knowledge of the defect, and (3) failure to act on the part of the responsible agency. MCL 691.1406; MSA 3.996(106); *Ransburg v Wayne Co,* 170 Mich App 358; 427 NW2d 906 (1988).

A building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. *Bush v Oscoda Area Schools,* 405 Mich 716, 730; 275 NW2d 268 (1979). The question of whether a part of a public building is dangerous or defective is to be determined in light of the "uses or activities" for which the building is "specifically assigned." *Id.,* p 531; *Lockaby v Wayne Co,* 406 Mich 65, 76-77; 276 NW2d 1 (1979). A building may be safe for one use or purpose but not for another. *Bush, supra,* p 532.

Most recently, our Supreme Court in *Reardon v Dep't of Mental Health,* 430 Mich 398, 409-410; 424 NW2d 248 (1988), reiterated the above principles and stated that the Legislature intended that the building exception is to apply to a situation in which an injury arises out of a dangerous or defective physical condition of the building itself. The existence of a defect and its relation to the alleged injuries is to be determined by the trier of fact. *Young v Ann Arbor,* 119 Mich App 512, 521; 326 NW2d 547 (1982).

Having set forth the applicable law, we next note that the lower court's findings of fact are subject to some degree of deference. MCR 2.613(C) provides that findings of fact by the trial court may not be set aside unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). Moreover, MCR 2.613(C) provides that regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.

On appeal, defendant basically contends that the lower court erred because the facts of this case

reveal nothing more than a case of improper supervision. Defendant argues that cases which involve improper, inadequate, or a lack of supervision are not cases which fall within the building exception to governmental immunity. While it is true that cases which involve nothing more than improper or inadequate supervision do not make out a case under the building exception to governmental immunity, we disagree with defendant's contention that this case is one involving *only* improper supervision. We believe that the facts of this case involve a building defect as well.

There is no question that improper supervision played some role in decedent's death. The lower court specifically found that Henry Bareiss was negligent. The lower court explained:

> The Court finds that Henry Bareiss was negligent. Bareiss' conduct, in allowing Plaintiffs' decedent to turn the main water valve on, and in leaving him unattended for half an hour while he returned to the nursing station, which is not within speaking and hearing distance, was a proximate cause of Plaintiffs' decedent's death.

However, the court went on to note that its finding that Bareiss' conduct was a proximate cause of decedent's death did not preclude the court from finding that a building defect, that is the defective design of or absence of safety devices, was also a proximate cause of decedent's death. We agree. Clearly, there may be more than one proximate cause of an injury. See, e.g., *May v Parke, Davis & Co*, 142 Mich App 404, 419; 370 NW2d 371 (1985), lv den 424 Mich 878 (1986). See also *Davis v Detroit*, 149 Mich App 249, 262-264; 386 NW2d 169 (1986), lv den 426 Mich 856 (1986).

The lower court in finding that the building

exception applied to the facts of this case concluded the following:

> The Court does, however, find that Plaintiff has proven by a preponderance of the evidence that the improper design of the shower and bathing facilities at the Fairlawn center constituted a dangerous or defective condition within the meaning of MCLA 691.1406. Because of improper design, the system had to be completely altered or some safety device necessarily should have been employed as hereafter explained.
>
> * * *
>
> The complexity of the valves contained in the control box, their location in relation to the showers and bathtub, valve "D" which automatically and unnecessarily activated all three showers when one wanted only to activate the bathtub, the inability to hear the water being drawn in the bathtub while the showers were on, the failure to have monitors, alarms, video cameras, or other protective devices which would alert the staff that a patient was drawing water in the bathtub all constitute a dangerous and defective condition, due to the design of the shower and bathing facility at Fairlawn, within the meaning of MCLA 691.1406, in light of the use for which the shower and bathing facilities was specifically assigned; that is, the bathing and showering place for a known epileptic and mildly retarded patient subject to convulsions which occured [sic] without warning whom the staff was well aware was at risk for drowning if subject to a seizure while taking a bath. True, as Defendant argues, there is no medical standard that requires special safety devices to control the flow of water in an institution of this kind. However, Defendant does not have a normal water flow system which would meet the standard. Defendant had a complex and unwieldy system and was responsible to change it or protect patients from it by the use of one of many available safety devices.

We are persuaded by the reasoning employed by the trial court and find no basis for concluding that the trial court clearly erred in finding that the shower and bath facilities at Fairlawn Center constituted a dangerous and defective condition within the meaning of the building exception to governmental immunity. Therefore, the trial court did not clearly err in finding a defect in defendant's building which falls within the building exception. *Ransburg, supra.*

As for the remaining two elements necessary for establishing a prima facie case under the building exception, that is, defendant's actual or constructive knowledge of the defect and defendant's failure to act in light of that knowledge, we conclude that there is ample support in the record establishing these elements. *Ransburg, supra.* Since plaintiffs established all three elements of the cause of action, and there is support for each of these elements in the record, we affirm the trial court's finding of liability against defendant.

Defendant's remaining issues raised on appeal are without merit. Briefly, the evidence produced at trial did not exceed the scope of plaintiffs' pleadings, and there was no error by the trial court in denying defendant's motion for a directed verdict.

Affirmed.

SULLIVAN, P.J., concurred.

M. WARSHAWSKY, J. *(dissenting).* I respectfully dissent.

I find that plaintiffs' claim is barred by governmental immunity. I do not agree that there was a defect in the building. Rather, I conclude that this was solely a case of poor supervision, which does

not fall within the building exception to governmental immunity. I would reverse the lower court judgment in plaintiffs' favor and dismiss plaintiffs' claim.