**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 11, 2007

KAREN RENNY and CHARLES RENNY,

Plaintiffs-Appellees,

v                                                                No. 131086

MICHIGAN DEPARTMENT OF TRANSPORTATION,

Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

In this case we consider whether a "design defect" claim is cognizable under the public building exception to governmental immunity, MCL 691.1406. The plain language of the public building exception imposes a duty only to "repair and maintain" a public building. In the absence of any additional language addressing design defects, we hold that the public building exception to governmental immunity does not permit a cause of action premised upon an alleged design defect. We disavow any dicta to the contrary in our earlier cases

and overrule any cases such as *Sewell v Southfield Pub Schools*,[1] and *Williamson v Dep't of Mental Health*,[2] that can be construed to stand for the proposition that design defects fall within the public building exception. However, because plaintiff's[3] complaint alternatively alleged that defendant Michigan Department of Transportation (MDOT) failed to repair and maintain the public building, we remand to the Court of Claims to determine whether plaintiff's suit may proceed with respect to these allegations.[4] Accordingly, we affirm the Court of Appeals reversal of summary disposition in favor of MDOT, reverse the Court of Appeals holding that design defects are actionable under the public building exception and remand the case to the Court of Claims for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Karen Renny visited a rest area in Roscommon County, Michigan, in January 2000. She alleged that while leaving the rest area building, she slipped

---

[1] 456 Mich 670; 576 NW2d 153 (1998).

[2] 176 Mich App 752; 440 NW2d 97 (1989).

[3] Coplaintiff Charles Renny filed a claim for loss of consortium, which is derivative of his wife's claim. Therefore, we will refer to plaintiff singularly.

[4] We do not pass judgment on the legal viability of plaintiff's allegations with respect to a failure to maintain and repair the rest area building, nor should this opinion be construed as holding that plaintiff is entitled to proceed to trial. We simply observe that plaintiff in her complaint minimally pleaded in avoidance of governmental immunity and therefore we remand for further proceedings on that basis. See part IV, *infra*.

on a patch of snow and ice on the sidewalk in front of the doorway and suffered serious injuries to her right wrist. Plaintiff sued MDOT, alleging that her injuries resulted from a defective condition of the rest area building. According to plaintiff, "by [MDOT] designing, constructing, keeping and/or maintaining" the rest area in a defective condition, melted snow and ice accumulated on the sidewalks in front of the entranceway and created a hazardous, slippery surface.[5] Plaintiff attributed the accumulated snow and ice, in part, to MDOT's failure to install and maintain gutters and downspouts around the roof of the building. Plaintiff maintained that gutters and downspouts would have safely channeled the snow and ice that melted off the roof away from the sidewalks. Moreover, plaintiff alleged that MDOT had actual or constructive notice of these defects for more than 90 days before the accident, but failed to remedy them. MDOT moved for summary disposition, which the Court of Claims granted on the basis of governmental immunity.

In a published per curiam decision, the Court of Appeals reversed the Court of Claims.[6] The panel held that plaintiff's claim was cognizable as a design defect claim under the public building exception. It further concluded that plaintiff's

_____

[5] Plaintiff also sued the Roscommon County Road Commission and Roscommon Township in a separate circuit court action that was consolidated with this case at the trial court level. Both parties were dismissed, and neither party is participating in this appeal.

[6] *Renny v Dep't of Transportation*, 270 Mich App 318; 716 NW2d 1 (2006).

injured wrist was directly attributable to a dangerous or defective condition of the building itself even though the dangerous condition of snow and ice existed outside the building.

This Court granted MDOT's application for leave to appeal.[7]

## II. STANDARD OF REVIEW

This Court reviews de novo motions for summary disposition.[8] Questions of statutory interpretation are questions of law that are also reviewed de novo by this Court.[9] This Court approaches the task of statutory interpretation by seeking to give effect to the Legislature's intent as expressed in the statutory language.[10] "When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted."[11]

---

[7] 477 Mich 958 (2006). In our order granting leave, we asked the parties to address three questions: (1) whether the Court of Appeals correctly characterized the alleged dangerous or defective condition in this case as a design defect; (2) whether the public building exception, which obligates a governmental agency "to repair and maintain public buildings," permits a party to bring a design defect claim; and (3) whether the Court of Appeals' conclusion that the icy sidewalk was not a transitory condition is contrary to this Court's decision in *Wade*.

[8] *Grimes v Dep't of Transportation*, 475 Mich 72, 76; 715 NW2d 275 (2006).

[9] *Id.*

[10] *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

[11] *Id.*

## III. ANALYSIS

This case pivots on the proper interpretation of the public building exception to governmental immunity. MCL 691.1406 states, in pertinent part, that

> *[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public.* Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [Emphasis added.]

This Court has held that in order for a plaintiff to avoid governmental immunity under the public building exception, the plaintiff must prove that (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable amount of time.[12] In this case, the parties dispute whether plaintiff has satisfied the third element. That is, whether plaintiff was injured by a dangerous or defective condition of the rest area building.

---

[12] *de Sanchez v Dep't of Mental Health*, 467 Mich 231, 236; 651 NW2d 59 (2002).

Plaintiff maintains that the dangerous or defective condition of the rest area building arose from a design defect, and that a design defect claim is cognizable under the public building exception.[13] She rests her argument on certain language from *Bush v Oscoda Area Schools*[14] that we have reiterated in *Reardon v Dep't of Mental Health*[15] and other subsequent cases.[16] In *Bush*, the plaintiff, the mother of an injured student, sued the student's school and school officials after a jug of wood alcohol exploded in a non-laboratory classroom temporarily used to hold science class. Concluding that the plaintiff stated a claim against the defendants under the public building exception, this Court opined that

> [t]he defective building provision is structurally similar to the defective highway provisions. It states a duty "repair and maintain", and in providing a cause of action extends it to "a dangerous or defective condition of a building". We construe the defective building provision as we have the defective highway provision. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain.

---

[13] Plaintiff argues alternatively that the defective condition of the rest area building arose from a failure to maintain gutters around the building.

[14] 405 Mich 716; 275 NW2d 268 (1979).

[15] 430 Mich 398; 424 NW2d 248 (1988).

[16] See, e.g., *Johnson v Detroit*, 457 Mich 695; 579 NW2d 895 (1998); *Sewell, supra*; *Hickey v Zezulka (On Resubmission)*, 439 Mich 408; 487 NW2d 106 (1992); see also *Williamson, supra*.

As in the highway cases, a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. [17]

In *Reardon*, this Court quoted *Bush* approvingly to make the point that the public building exception applies only where an injury "is occasioned by a physical defect or dangerous condition of the building itself"[18] rather than where an injury merely occurs on the premises. In its discussion of the governmental agency's duty under the public building exception, the *Reardon* Court opined that

> [t]he first sentence [of the public building exception] imposes upon governmental agencies the duty to "repair and maintain public buildings under their control . . . ." In *Bush v Oscoda Area Schools*, 405 Mich 716; 275 NW2d 268 (1979), we held that this duty is not strictly limited to the repair or maintenance of public buildings. Instead, we held that "a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices." *Id*. at 730. We reiterate this proposition, as the holding in *Bush* is entirely consistent with today's conclusion that the injury must be occasioned by the dangerous or defective condition of the building itself. As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices. However, while the public building exception is not strictly limited to failures of repair or maintenance, the Legislature's choice of those terms to define the governmental duty is indicative of its intention regarding the scope of the exception. The duty to repair and maintain a premises clearly relates to the physical condition of the premises.[19]

---

[17] *Bush*, 405 Mich at 730.

[18] *Reardon*, 430 Mich at 400.

[19] *Id*. at 409-410.

7

Citing *Bush* and *Reardon*, this Court has stated elsewhere that a defective design claim falls within the public building exception.[20] Plaintiff rests her design defect claim on this line of cases.

MDOT responds that this Court has never squarely held that a design defect is cognizable under the public building exception. According to MDOT, *Reardon*'s discussion of *Bush* and design defect claims was obiter dictum. *Reardon* considered and rejected the notion that the public building exception extended to injuries that occur in a public building but were not occasioned by a physical condition of the building itself. It did not pass on the merits of a design defect claim.

Moreover, MDOT argues that *Reardon* mischaracterized *Bush* as *holding* that design defects fall within the public building exception, when *Bush* in fact only considered the intended use of the classroom and the lack of safety devices in its holding. Thus, MDOT argues, it was unnecessary for the *Bush* Court to opine on the propriety of a design defect claim and its statement on that question was dictum. Finally, MDOT points out, this Court more recently has openly questioned whether a design defect claim fits within the public building exception. In *de Sanchez v Dep't of Mental Health*,[21] we stated that

---

[20] See, e.g., *Johnson, supra*; *Sewell, supra*; *Hickey, supra*.

[21] 455 Mich 83, 96; 565 NW2d 358 (1997).

> [d]espite the oft-cited proposition that a public building may be dangerous or defective because of its improper design, the issue whether a design defect may actually constitute a defect in a public building sufficient to invoke the public building exception has caused this Court considerable difficulty. Nonetheless, that issue is not before this Court.

In short, MDOT argues, any support provided by the caselaw on which plaintiff heavily relies is illusory.

More specifically, MDOT contends that plaintiff's reliance on *Bush* is misplaced because this Court has since dismantled the reasoning underpinning *Bush*. The majority in *Bush* relied heavily on the structural and linguistic similarities between the highway exception and the public building exception. Therefore, because our caselaw held that a design defect claim fell within the highway exception, the *Bush* majority placed the same judicial gloss on the public building exception. Beginning with *Nawrocki v Macomb Co Rd Comm*,[22] this Court returned to a more textually faithful interpretation of the highway exception. This trend continued in *Hanson v Mecosta Co Rd Comm*,[23] where this Court disavowed the line of highway exception cases that recognized a design defect

---

[22] 463 Mich 143; 615 NW2d 702 (2000).

[23] 465 Mich 492, 502; 638 NW2d 396 (2002). The Court of Appeals also signaled a more principled approach to the highway exception. See, e.g., *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579, 587-588; 546 NW2d 690 (1996) ("The Legislature thus did not purport to demand of governmental agencies having jurisdiction of highways that they improve or enhance existing highways . . . . The only statutory requirement and the only mandate that, if ignored, can form the basis for tort liability is to 'maintain' the highway in reasonable repair.").

9

claim and held that "the highway exception does not include a duty to design, or to correct defects arising from the original design or construction of highways." MDOT reasons syllogistically, then, that this Court, since deciding *Bush*, has recognized that the highway exception does not allow for a design defect claim. It was vital to the *Bush* majority's logic that the highway exception permitted design defect claims. Now that this central premise has been repudiated, there is no reason for a similarly erroneous statutory construction to persist with regard to the public building exception.

With respect to the plain language of the statute, MDOT notes that plaintiff's position is entirely at odds with the statute itself. The statutory language refers only to the governmental agency's duty to "repair and maintain public buildings," and does not refer to any duty to design a public building. Therefore, to hold that the language of the statute includes a design defect claim is inconsistent with its plain language.

While plaintiff relies almost exclusively on caselaw, MDOT largely appeals to the statutory language. In order to decide an issue of statutory construction, we must *first* resort to the plain language of the public building exception to determine the Legislature's intent.[24] We agree with MDOT that this provision clearly does not support a design defect claim. The first sentence of MCL

---

[24] *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005).

691.1406 states that "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public." This sentence unequivocally establishes the duty of a governmental agency to "repair and maintain" public buildings. Neither the term "repair" nor the term "maintain," which we construe according to their common usage, encompasses a duty to design or redesign the public building in a particular manner. "Design" is defined as "to conceive; invent; contrive."[25] By contrast, "repair" means "to restore to sound condition after damage or injury."[26] Similarly, "maintain" means "to keep up" or "to preserve."[27] Central to the definitions of "repair" and "maintain" is the notion of restoring or returning something, in this case a public building, to a prior state or condition. "Design" refers to the initial conception of the building, rather than its restoration. "Design" and "repair and maintain," then, are unmistakably disparate concepts, and the Legislature's sole use of "repair and maintain" unambiguously indicates that it did not intend to include design defect claims within the scope of the public building exception.

The second sentence of MCL 691.1406, which imposes liability on governmental agencies "for bodily injury and property damage resulting from a dangerous or defective condition of a public building," does not expand the duty

---

[25] *The American Heritage Dictionary of the English Language, New College Edition* (1978).

[26] *Id.*

[27] *Id.*

beyond the repair and maintenance of a public building. The phrase imposes liability where the "dangerous or defective condition of a public building" arises out of the governmental agency's failure to repair and maintain that building. It is not suggestive of an additional duty beyond repair and maintenance. There is no reason to suspect that the Legislature intended to impose a duty to prevent "dangerous or defective condition[s]" in public buildings in a manner wholly unrelated to the obligation clearly stated in the first sentence.[28]

Contrary to the dissent's suggestion that *Bush* represents an unbroken precedent, *Bush* has been consistently undermined by subsequent decisions of this Court. First, *Bush* was succeeded by *Ross v Consumers Power Co (On Rehearing)*,[29] a case that fundamentally altered the way we construe the governmental immunity statute. Second, we agree with MDOT that *Hanson*

---

[28] According to the dissent, it "defies logic" that a governmental agency would have a duty to repair and maintain a public building but would not be liable if a public building could have been more safely designed. Such a statement fails to recognize that the very purpose of governmental immunity is to *limit* the government's exposure to liability. Clearly, this is precisely what the Legislature intended to convey with its deliberately chosen words. It is entirely logical that it would have chosen *not* to expose a governmental agency to liability for a design defect. The duty to repair and maintain a public building does not impose an unforeseeable and potentially significant liability on governmental agencies. The same cannot be said of a duty to *design* a safe public building, which would be measured in hindsight by courts that are ill-equipped to consider the budgetary and architectural trade-offs involved in the construction of any structure. Thus, far from being illogical, a narrowly tailored duty of repair and maintenance is entirely consistent with the government's interest in limiting its liability.

[29] 420 Mich 567; 363 NW2d 641 (1984).

12

collapsed the "logic" in *Bush* supporting a design defect claim. Finally, we also note that the propriety of a claim under the public building exception premised on a lack of safety devices is also undermined by *Fane v Detroit Library Comm*[30] – a decision authored by the dissent. In *Fane*, we held under the facts of that case that an elevated terrace was "of a public building." We emphasized that the public building exception only refers to injuries resulting from dangerous or defective conditions "of a public building" and that a fixtures analysis is useful in determining whether the condition giving rise to the injury is "of a public building." In light of *Fane*, we fail to see how injuries from an exploding jug could have resulted from a dangerous or defective condition "of a public building" or could survive a fixtures analysis under *Fane*.

Because we conclude that the statutory language is unambiguous and imposes a duty only to repair and maintain a public building, we must reconsider our earlier cases suggesting that a design defect claim is cognizable under the public building exception.[31] As we said in *de Sanchez*, it is an oft-cited

---

[30] 465 Mich 68; 631 NW2d 678 (2001).

[31] The dissent claims that the Legislature acquiesced in *Bush*'s erroneous interpretation of the public building exception. That this Court highly disfavors the doctrine of legislative acquiescence has been elsewhere stated. See, e.g., *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007); *Grimes*, 475 Mich at 84; *Robinson v Detroit*, 462 Mich 439, 465; 613 NW2d 307 (2000); *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999). Thus, for the reasons stated in these opinions, the dissent's reliance on this spurious rule is a nonstarter.

proposition that design defect claims fall within the public building exception. Yet there are few instances where this Court or the Court of Appeals has endorsed a design defect claim. We agree with MDOT that *Bush* involved an alleged lack of safety devices and was not a design defect case, so its discussion of the latter was dictum. Although at one point the *Bush* majority stated that "[p]laintiff has alleged that the improper design of the classroom and absence of safety devices rendered it unsafe as a science classroom," elsewhere it opined that "[p]laintiff's defective building theory is based on lack of safety devices."[32] We also agree with MDOT that *Reardon* was not a design defect case and its discussion of design defect claims was dictum. Rather, *Reardon* held that the public building exception "impose[s] a duty to maintain safe public buildings, not necessarily safety *in* public buildings."[33]

In subsequent cases, this Court has not endorsed a plaintiff's design defect claim. In *Hickey, supra*, responding to the plaintiff's argument that the alleged improper design of a Michigan State University Department of Public Safety holding cell caused the decedent to hang himself, this Court stated that "[a]lthough we agree that a claim of improper design may allow the public building exception

---

[32] *Bush*, 405 Mich at 730-731, 728 n 7.

[33] *Reardon*, 430 Mich at 415 (emphasis in original). Thus, the dissent attributes too much significance to the *Reardon* Court's recitation of the design defect language from *Bush* and certainly is incorrect in suggesting that we are overturning *Reardon*.

14

to be applied, that outcome is not required"[34] because the connection between the alleged design defect and the injury was too tenuous to invoke the exception. So, this Court did not pass judgment on the plaintiff's design defect claim. In *de Sanchez, supra*, where the decedent hung himself in a restroom, this Court expressly stated that the plaintiff's design defect claim was not before the Court.[35] In *Johnson, supra*, another suicide case, a majority of this Court concluded that the public building exception was applicable because the police station holding cell was defective given its intended use as a suicide-deterrent cell. This Court did not focus on a design defect claim.

In addition to the Court of Appeals decision in this case, we are aware of only two cases where a design defect claim was recognized implicitly or explicitly by a court. In *Williamson, supra*, the Court of Appeals affirmed the Court of Claims determination that the plaintiff alleged a design defect or absence of safety features that was a proximate cause of the decedent's death. The decedent, a mildly retarded, epileptic teenager, drowned while taking an unsupervised bath at a Department of Mental Health residential treatment facility. The Court of Claims found that the plaintiff proved by a preponderance of the evidence that the improper design of the shower and bathing facilities constituted a dangerous or

---

[34] *Hickey*, 439 Mich at 423 (opinion by Brickley, J.).

[35] *de Sanchez*, 455 Mich at 96.

15

defective condition of the public building that the defendant had a duty to alter or modify with safety devices.

And, in *Sewell, supra*, this Court reversed summary disposition in favor of the defendant Southfield Public Schools, where the minor plaintiff suffered a spinal cord injury after diving into a shallow pool at the high school, holding that the plaintiff created a question of fact regarding the existence of an actual defect in the pool. We examined the intended use of the pool, and held that diving, and not just swimming, was an intended use. Second, we held that the plaintiffs' allegations of faulty construction and improper design sufficiently alleged an actual defect. These defects included an uneven pool floor and mismarked depth markers. The plaintiffs' experts opined about the poor design and layout of the pool, claiming that there was a design failure. We disagreed with the lower courts that this was merely a case of improper supervision.

In light of our foregoing analysis of the public building exception, we disavow the dicta in earlier decisions from this Court such as in *Bush* and *Reardon*, and any dicta from Court of Appeals decisions, suggesting that a design defect claim falls within the plain language of the provision. Also, we overrule any cases such as *Sewell* and *Williamson* that can be construed to stand for the proposition that design defects fall within the public building exception.[36]

---

[36] To the extent that it overrules *Sewell*, our decision today does not contravene the policy considerations that underpin the doctrine of stare decisis.
(continued…)

IV. APPLICATION

Returning to the facts of this case, plaintiff alleges that she was injured by a dangerous or defective condition of the rest area building. She argues that the absence of gutters and downspouts, among other defects in the building, permitted an unnatural accumulation of snow and ice on the sidewalks in front of an entranceway and created slippery, hazardous conditions for members of the public.

_____

(…continued)
See *Robinson*, *supra*. First, without question, *Sewell* relied on dicta originating in *Bush* that was clearly inconsistent with the plain language of the statute. This explains why the dissent treats the duty of safe design as "implicit" in the statute rather than "explicit" because that duty is nowhere to be found in the actual words. *Post* at 1, 10. Therefore, we are faithfully discharging our judicial responsibility by accurately interpreting and applying the statutory language in this case. Also, we are largely disavowing dicta rather than overruling prior established cases. We will not elevate dicta above the plain language of a statute. See *Hanson,* 465 Mich at 501 n 7. And, by repudiating dicta that is patently contrary to the statutory language, we are simply enforcing the plainly expressed intent of the Legislature.

Second, the practical workability of a design defect claim has elsewhere been called into question by this Court. A majority of this Court (which included the dissenting justice) noted that "whether a design defect may actually constitute a defect in a public building sufficient to invoke the public building exception has caused this Court considerable difficulty." *de Sanchez*, 455 Mich at 96. Third, turning to the question of reliance interests, it is hard to imagine that overruling *Sewell* and precluding design defect claims will be so jarring as to create practical, real-world dislocations. *Robinson*, 462 Mich at 466-467. Finally, contrary to what the dissent claims, there have been substantial changes in the law since *Bush* was decided, which undercuts the notion that *Bush* has functioned as an integral part of our jurisprudence for 28 years. As we discussed earlier, subsequent cases from this Court have undermined *Bush* and its progeny, including *Sewell.* See *Fane, supra*; *Hanson, supra*; *Nawrocki, supra*; *Ross, supra.* The dissent's correct assertion that *Hanson* dealt with a different portion of the governmental tort liability act and its belief that *Hanson* was wrongly decided misses the larger point that the law of governmental immunity has *significantly* changed since *Bush* was decided.

Consistent with today's decision, to the extent that plaintiff's claim is premised on a design defect of a public building, it is barred by governmental immunity. However, plaintiff also alleged that MDOT failed to repair and maintain the rest area building.[37]  Indeed, there is record evidence suggesting that the rest area building was once equipped with gutters and downspouts.  Although we do not pass judgment on the legal viability of plaintiff's claim or whether her claim may ultimately proceed to trial, plaintiff sufficiently pleaded in avoidance of governmental immunity.  Accordingly, we remand to the Court of Claims to determine whether plaintiff's suit may proceed with respect to the alleged failure to repair and maintain the public building.

## V.  CONCLUSION

We hold that design defect claims are not cognizable under the unambiguous, plain language of the public building exception, which refers only

---

[37] For instance, her complaint alleged:

> 11.  This accumulation of ice and snow occurred as a result of the defective condition of the roof of the building located immediately above this entrance/exit way to the building.  By way of illustration, not limitation, these defective conditions include the failure to install *and maintain* gutters and downspouts to redirect melting snow and ice on the roof above the entrance/exit away from the walkway.
> 
> * * *
> 
> 19.  Defendant breached this statutory duty [MCL 691.1406] by designing, constructing, *keeping and/or maintaining* the restroom building described herein which had dangerous and/or defective conditions . . . .

to the governmental agency's duty to "repair and maintain" the public building. Therefore, while we affirm the Court of Appeals reversal of summary disposition in favor of MDOT, we reverse the Court of Appeals holding that design defects are actionable under the public building exception, and we remand the case to the Court of Claims for further proceedings consistent with this decision.

Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

KAREN RENNY and CHARLES RENNY,

      Plaintiffs-Appellees,

v                                             No. 131086

MICHIGAN DEPARTMENT OF TRANSPORTATION,

      Defendant-Appellant.

_____

WEAVER, J. (*concurring in result only*).

I concur only in the result reached by the majority to affirm the Court of Appeals reversal of summary disposition in favor of defendant Michigan Department of Transportation and to remand this case to the Court of Claims for further proceedings on the basis that plaintiffs' complaint alternatively alleged that defendant failed to "repair and maintain" a public building pursuant to MCL 691.1406.[1]

_____

[1] MCL 691.1406 provides, in pertinent part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take

(continued…)

Because a majority of this Court has concluded that plaintiffs' complaint adequately alleged a claim against defendant for injuries plaintiff Karen Renny sustained as a result of defendant's failure to "repair and maintain" the rest area building, this Court need not address the issue whether plaintiffs could also pursue a claim for defective building design. In this respect, our order[2] granting leave to appeal and requesting the parties to address this issue was unnecessary and improvident. Moreover, any commentary by the majority on the question of defective building design is obiter dictum.

Thus, because the Court can decide this case without resorting to consideration of whether recovery is available under MCL 691.1406 for a plaintiff who alleges that injuries occurred as a result of a defectively designed public building, I would leave for another day consideration of the question whether recovery is available on the basis of defective design.

Elizabeth A. Weaver

_____
(…continued)
    action reasonably necessary to protect the public against the condition.

[2] *Renny v Dep't of Transportation,* 477 Mich 958 (2006).

STATE OF MICHIGAN

SUPREME COURT

KAREN RENNY and CHARLES RENNY,

      Plaintiffs-Appellees,

v                                         No. 131086

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

      Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I believe that the public building exception to governmental immunity[1] extends to the design of public buildings. The duty of safe design is implicit in the duty to maintain safe buildings. This interpretation of the public building exception is consistent with longstanding precedent of this Court. The Court should not disturb it.

THE PUBLIC BUILDING EXCEPTION TO GOVERNMENTAL IMMUNITY

The public building exception to governmental immunity, MCL 691.1406, states, in relevant part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective

_____

[1] MCL 691.1406.

condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

It is undisputed that the statute imposes on governmental agencies the duty to "repair and maintain" public buildings.

Accordingly, it defies logic that a governmental agency would be required to maintain a dangerously designed building and be exempted from liability for harm to the public caused by the building's design. It must be presumed that the Legislature intended that the design of public buildings should not cause injury to people. Accordingly, I would hold that the duty to "repair and maintain" public buildings necessarily includes the duty to design safe public buildings.

MICHIGAN CASELAW ADDRESSING DESIGN DEFECT CLAIMS

My interpretation is consistent with longstanding precedent of this Court. See *Bush v Oscoda Area Schools*, 405 Mich 716; 275 NW2d 268 (1979), *Reardon v Dep't of Mental Health*, 430 Mich 398; 424 NW2d 248 (1988), and *Sewell v Southfield Pub Schools*, 456 Mich 670; 576 NW2d 153 (1998). However, today the majority overturns this precedent. Not only do I find unpersuasive the majority's attempt to dismiss the holding in *Bush* as dictum, but I disagree that *Bush, Reardon,* and *Sewell* should be overturned.

2

The issue in *Bush*, among others, was whether the defendant public school district, its superintendent, a principal, and a classroom teacher were liable under the public building exception. *Bush*, 405 Mich at 724-725. The plaintiff high school student was enrolled in an introductory physical science class. *Id.* at 725. Although the class regularly met in a chemical laboratory equipped with safety features, because of increased enrollment, it met in a nonlaboratory room. *Id.* The temporary classroom lacked gas lines and gas-fired burners. *Id.* at 726. The students had to fill portable alcohol burners at a counter and carry them to and from their desks. *Id.* It was while the plaintiff student was returning her burner to the counter that an explosion occurred and she was enveloped in flames, suffering severe burns.

During the lawsuit that followed, the plaintiffs alleged that the temporary laboratory was dangerous and defective because of the improper design of the room *and* the absence of safety devices. *Id.* at 730-731. In order to determine whether the plaintiffs' complaint was within the public building exception to governmental immunity, it was necessary to interpret MCL 691.1406. Writing for the Court, Justice Charles Levin stated:

> We construe the defective building provision as we have the defective highway provision. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain.

As in the highway cases, a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. [*Bush*, 405 Mich at 730.]

On the basis of its interpretation of the statute, the *Bush* Court concluded that the plaintiffs' complaint had sufficiently stated a claim upon which relief could be granted. *Id.* at 733. The Court remanded the case to the trial court. *Id.* It was left to the trier of fact the determination whether, among other things, the classroom was defective when used as a physical science laboratory. *Id.* at 732. Integral to the holding was *Bush*'s determination that a public building may fall within the exception to governmental immunity as dangerous or defective because of improper design. Therefore, the language cited from *Bush* was, by definition, not dicta and constitutes binding precedent.

For the past 28 years, our courts have relied on that reasoning from *Bush*. In the years immediately following *Bush*, the Michigan Court of Appeals cited the case numerous times for the proposition that a design defect claim is actionable under the public building exception to governmental immunity. See *Lee v Highland Park School Dist*, 118 Mich App 305, 309; 324 NW2d 632 (1982); *Young v City of Ann Arbor*, 119 Mich App 512, 520-521; 326 NW2d 547 (1982); *Landry v Detroit*, 143 Mich App 16, 22; 371 NW2d 466 (1985).

REARDON V DEP'T OF MENTAL HEALTH

Nine years after *Bush*, in *Reardon,* this Court once again analyzed MCL 691.1406. *Reardon,* 430 Mich at 409-410. It considered carefully the first sentence of the statute, imposing a duty to "repair and maintain public buildings."

4

*Id.* at 410.  It explicitly reaffirmed the holding in *Bush* that a building may be defective because of improper design.  *Id.*  With regard to the second sentence of the statute, the Court held that the phrase "dangerous or defective condition of a public building" showed that the Legislature intended that the exception apply in cases where the physical condition of a building causes injury.  *Id.* at 411.

The *Reardon* Court specifically noted that its holding was consistent with *Bush*: "As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices."  *Id.* at 410.  Therefore, when this Court had the opportunity to reexamine its interpretation of MCL 691.1406, it reaffirmed the holding in *Bush* that defective design is actionable under the public building exception to governmental immunity.

### *WILLIAMSON V DEP'T OF MENTAL HEALTH*[2]

In *Williamson v Dep't of Mental Health*, the Court of Appeals cited *Bush* for the proposition that a building may be dangerous for the purpose of MCL 691.1406 because of improper design, faulty construction, or the absence of safety devices.[3]  The panel affirmed the trial court's finding that the building exception

---

[2] 176 Mich App 752, 757; 440 NW2d 97 (1989).

[3] *Williamson,* 176 Mich App at 757, noted that *Reardon* reiterated this principle.

5

applied where the shower and bathing facilities of the building in question had been improperly designed. *Williamson,* 176 Mich App at 758-760.

*SEWELL V SOUTHFIELD PUB SCHOOLS*

In *Sewell,* this Court again stated that a building may be dangerous or defective because of improper design.[4]  We held that the grant of summary disposition to the defendant was improper because the plaintiff had sufficiently alleged a dangerous condition arising from faulty construction and improper design. *Sewell,* 456 Mich at 671-672.[5]

Therefore, the frequently repeated proposition that design defect claims fall within the public building exception to governmental immunity has become a bedrock of Michigan jurisprudence.  The majority distracts attention from this fact by citing cases that this Court resolved without determining whether there was a design defect.  See  *Hickey v Zezulka (On Resubmission)*, 439 Mich 408; 487 NW2d 106 (1992); *de Sanchez v Michigan Dep't of Mental Health*, 455 Mich 83; 565 NW2d 358 (1997); *Johnson v Detroit*, 457 Mich 695; 579 NW2d 895 (1998).

---

[4] *Sewell*, 456 Mich at 675, cited *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 422; 487 NW2d 106 (1992), which quoted *Bush* for the proposition that a public building may be dangerous or defective because of improper design.

[5] *Sewell* has been relied on for the proposition that a building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices.  See *Kruger v White Lake Twp*, 250 Mich App 622, 626; 648 NW2d 660 (2002).

6

However, in none of those cases did this Court overrule *Bush* or *Sewell* and hold that design defects do not fall within the public building exception. Rather, two of them, *Hickey* and *Johnson,* cited *Bush* for the proposition that a building may be defective because of improper design. *Hickey*, 439 Mich at 422; *Johnson*, 457 Mich at 704. This Court in *de Sanchez* noted that it is an "oft-cited proposition that a public building may be dangerous or defective because of its improper design[.]" *de Sanchez*, 455 Mich at 96.[6] Moreover, *Hickey* and *de Sanchez* were decided before *Sewell.* If there had been any question about whether a design defect claim could be brought under the public building exception, *Sewell* resolved it.

Also, it should be noted that, had the Legislature disagreed with this Court's interpretation of MCL 691.1406, it had many years to amend the language of the statute. Its failure to do so suggests that the Legislature's intent was that a design defect claim be actionable under the public building exception to governmental immunity.[7]

---

[6] Although it is true that this Court opined in *de Sanchez* that the proposition has caused this Court difficulty, we did not disavow the proposition in that case. Rather, we noted that it was inapplicable to the facts before us.

[7] The majority, once again, takes issue with my use of the doctrine of legislative acquiescence. However, as I have previously noted, legislative acquiescence is a valid judicial tool for statutory interpretation. *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 53-54; 732 NW2d 56 (2007) (Kelly, J., dissenting); see also *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 259-264; 731 NW2d 41 (2007) (Kelly, J., concurring in part and dissenting in part).

(continued…)

7

Because it erroneously characterizes the holding in *Bush* as dictum, the majority finds no need to consider the factors set forth in *Robinson* for deciding whether to overturn *Bush*. *Robinson,* 462 Mich at 464. But *Bush*'s holding that design defects are actionable under the public building exception was not dictum. Therefore, I will now review the *Robinson* factors.

The first consideration is whether the earlier decision was wrongly decided. *Robinson*, 462 Mich at 464. I believe it was not. As discussed above, implicit in a duty to "maintain and repair" a public building is a duty to properly design the building. Therefore, I believe that *Bush* properly interpreted the public building exception as including a duty to design public buildings to be safe. Moreover, the Legislature has acquiesced in *Bush*'s interpretation of MCL 691.1406. This suggests that *Bush* correctly interpreted the statute to mean that a design defect claim is actionable.

The other *Robinson* factors are: (1) whether the decision at issue defies "practical workability," (2) whether reliance interests would work an undue hardship if the authority is overturned, and (3) whether changes in the law or facts make the decision no longer justified. *Robinson*, 462 Mich at 464.

_____

(…continued)
Merely because some members of the Court will not use it does not render it unusable.

[8] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

*Bush* does not defy practical workability. Rather, it has functioned as an integral part of our governmental immunity jurisprudence for the past 28 years. Conversely, reliance interests would work an undue hardship if *Bush* were overturned. As indicated above, it is a frequently cited proposition that design defect claims fall within the public building exception.[9] Clearly, overturning *Bush* will mark a drastic shift in Michigan jurisprudence.

No changes in the law or the facts render the decision unjustified. It is true that, in deciding *Bush*, the Court relied on the structural similarity between the public building exception and the highway exception statutes. *Bush*, 405 Mich at 730. It is also true that the Court in *Hanson v Mecosta Co Rd Comm'rs,* 465 Mich 492, 502; 638 NW2d 396 (2002), held that the highway exception does not include a duty to design or correct defects arising from the original design of highways. However, *Hanson* is not on point with this case. *Hanson* concerned the highway exception, whereas this case concerns the public building exception. Especially considering that *Hanson,* in my estimation, was incorrectly decided, its holding should not be extended to the public building exception.[10]

---

[9] See *Lee, supra*; *Young, supra*; *Landry, supra*; *Reardon, supra*; *Williamson, supra*; *Hickey, supra*; *Kruger, supra*; and *Sewell*, *supra*.

[10] I would also note that I dissented in *Hanson*, and I continue to believe that *Hanson* was incorrectly decided.

The majority also claims that *Bush* has been undermined by subsequent decisions of this Court. The majority notes that *Bush* was succeeded by *Ross v Consumers Power Co (On Rehearing),*[11] which altered the way this Court construes the governmental immunity statute. However, *Ross* did not overrule *Bush*. Moreover, *Reardon* and *Sewell* were decided after *Bush* and *Ross*. Neither *Reardon* nor *Sewell* determined that *Ross* affected *Bush*'s holding that defective designs are actionable under the public building exception. In fact, *Reardon* quoted *Ross* in order to explain the Legislature's rationale for enacting the governmental immunity act. *Reardon,* 430 Mich at 408. *Reardon* then reiterated the *Bush* holding that defective designs are actionable under the public building exception.

The majority also contends that *Fane v Detroit Library Comm*[12] undermines *Bush*. However, nothing in *Fane* undermines *Bush*'s holding that design defects are actionable under the public building exception. *Fane* interpreted the meaning of the phrase "of a building" in the public building exception. *Fane,* 465 Mich at 77-78. *Fane* did not interpret the phrase "repair and maintain."

---

[11] 420 Mich 567; 363 NW2d 641 (1984).

[12] 465 Mich 68; 631 NW2d 678 (2001).

CONCLUSION

I agree with the majority's decision to remand this case to the Court of Claims for further proceedings with regard to plaintiffs' claim that defendant failed to properly repair and maintain the public building.

But I would reaffirm the longstanding precedent of this Court that design defects are actionable under the public building exception to governmental immunity, MCL 691.1406. A duty to design safe public buildings is implicit in a duty to repair and maintain them. This interpretation of MCL 691.1406 is consistent with this Court's longstanding precedent and, as demonstrated by a review of the *Robinson* factors, should not be overruled.

Marilyn Kelly
Michael F. Cavanagh